CLERK'S OFFICE U.S. DIST. COURT
AT HARRISONBURG, VA
FILED

May 22, 2025

LAURA A. AUSTIN, CLERK
BY:  s/J.Vasquez
DEPUTY CLERK

## UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF VIRGINIA
## HARRISONBURG DIVISION

| | |
|---|---|
| UNIVERSAL LIFE CHURCH MONASTERY STOREHOUSE; REV. JAYLEN N. SHORTS, an individual; and REV. MICHAEL E. DAVIS, an individual, | Civil Action No. _5:25-cv-00047_ |
| Plaintiffs, | **COMPLAINT FOR INJUNCTIVE AND DECLARATORY RELIEF** |
| v. | |
| R. STEVEN LANDES, in his official capacity as Clerk of Circuit Court for Augusta County; TIM A. MARTIN, in his official capacity as Commonwealth's Attorney for Augusta County; STACI N. FALLS, in her official capacity as Clerk of Circuit Court for the City of Staunton; and JEFFREY GAINES, in his official capacity as Commonwealth's Attorney for the City of Staunton, | |
| Defendants. | |

1

## INTRODUCTION

1.     This action seeks to enjoin Augusta County and City of Staunton officials from discriminating against Plaintiff Universal Life Church Monastery Storehouse ("ULC Monastery" or "the Church") and its ministers in violation of the First and Fourteenth Amendments. Although these officials authorize ordained ministers of other religious orders to solemnize marriages, they—like the majority of Circuit Court Clerks in the Commonwealth of Virginia—choose to deny ULC Monastery and its ministers that benefit without constitutional justification.

2.     ULC Monastery is a non-denominational religious organization that champions religious freedom, social justice, and diverse forms of spiritual expression. Its ecclesiastical beliefs rest on the conviction that all people are children of the same universe. In keeping with its religious mission, the Church ordains individuals who feel called to ministry. Many of its ministers serve by solemnizing marriages, an act of religious expression central to their spiritual calling.

3.     There are two paths for ordained ministers of a religious society like ULC Monastery to solemnize marriages in the Commonwealth of Virginia, and a third more onerous path open to civil celebrants who are not affiliated with any religious society. First, the Virginia Code authorizes "a minister of any religious denomination" who is "in regular communion with the religious society of which he is a reputed member" to solemnize marriages. *See* Va. Code. Ann. § 20-23. Second, where a religious society has no ordained ministers—or where *all* members are equally able to minister the rites and customs of the religion—the Virginia Code grants all the persons so designated by the rules and customs of that society the authority to solemnize marriages. *See* Va. Code Ann. § 20-26. A third path exists for civil celebrants who are not ministers of any religious order, and it requires such persons to post a $500 bond and seek a court order. *See* Va. Code. Ann. § 20-25.

4.      Defendants R. Steven Landes and Staci N. Falls, Clerks of Circuit Court for Augusta County and the City of Staunton ("Clerk Defendants"), have categorically refused to recognize ULC Monastery ministers under either of the statutes authorizing ministers of a religious society to perform marriages in Virginia. Like clerks across Virginia, the Clerk Defendants instead require ULC Monastery-ordained ministers in regular communion with the Church—including Plaintiffs Rev. Jaylen N. Shorts and Rev. Michael E. Davis—to register as ordinary civil celebrants subject to the more onerous requirements of Virginia Code § 20-25. This policy and practice prevents ULC Monastery ministers from exercising the same legal rights afforded to clergy of other state-favored denominations; burdens their and the Church's religious practice; exposes Church ministers to criminal prosecution by Defendants Tim A. Martin and Jeffrey Gaines (the "Prosecuting Defendants") under Va. Code Ann. § 20-28; and stigmatizes the Church and its ministers—branding them and their religious practices illegitimate in the eyes of the government.

5.      This discriminatory enforcement of Virginia law violates Plaintiffs' basic constitutional rights. Denying ULC Monastery ministers the same recognition and authority granted to ministers of other religious traditions violates the Establishment and Free Exercise Clauses of the First Amendment, and the Equal Protection Clause of the Fourteenth Amendment. It also violates the Free Speech Clause of the First Amendment by imposing an unconstitutional condition that burdens the ULC Monastery and its ministers' speech based on its content and viewpoint—i.e., its association with the Church.

6.      The Constitution is clear that "one religious denomination cannot be officially preferred over another." *Larson v. Valente*, 456 U.S. 228, 244 (1982). Plaintiffs respectfully request an order enforcing this principle and enjoining Defendants' unconstitutional policy of enforcing Virginia law in a manner that favors some religious societies over others.

3

## PARTIES

7.      Plaintiff ULC Monastery is a non-denominational religious organization and a nonprofit corporation organized under the laws of the State of Washington, with its principal place of business in Seattle, Washington.

8.      Plaintiff Reverend Michael E. Davis is an ordained minister of ULC Monastery and a resident of Staunton, Virginia.

9.      Plaintiff Reverend Jaylen N. Shorts is an ordained minister of ULC Monastery and a resident of Staunton, Virginia.

10.     Defendant R. Steven Landes is the duly elected and serving Clerk of Circuit Court for Augusta County, Virginia. In that capacity, he and his office implement and enforce Va. Code Ann. §§ 20-23, 20-25, and 20-26, including by determining whether a person qualifies as a minister authorized to solemnize marriages under Virginia law. He is sued in his official capacity as an officer of the Commonwealth.

11.     Defendant Tim A. Martin is the duly elected and serving Commonwealth's Attorney for Augusta County, Virginia. In that capacity, he and his office have authority to enforce Va. Code Ann. §§ 20-23, 20-25, and 20-26, including by initiating criminal proceedings under Va. Code Ann. § 20-28 against individuals who solemnize marriages without legal authorization. He is sued in his official capacity as an officer of the Commonwealth.

12.     Defendant Staci N. Falls is the duly elected and serving Clerk of Circuit Court for the City of Staunton, Virginia. In that capacity, she and her office implement and enforce Va. Code Ann. §§ 20-23, 20-25, and 20-26, including by determining whether a person qualifies as a minister authorized to solemnize marriages under Virginia law. She is sued in her official capacity

as an officer of the Commonwealth.

13.    Defendant Jeffrey Gaines is the duly elected and serving Commonwealth's Attorney for the City of Staunton, Virginia.  In that capacity, he and his office have authority to enforce Va. Code Ann. §§ 20-23, 20-25, and 20-26, including by initiating criminal proceedings under Va. Code Ann. § 20-28 against individuals who solemnize marriages without legal authorization.  He is sued in his official capacity as an officer of the Commonwealth.

## JURISDICTION & VENUE

14.    This action arises under the United States Constitution, specifically the First and Fourteenth Amendments, and under the Civil Rights Act, 42 U.S.C. §§ 1983 and 1988.

15.    This Court has original jurisdiction over these federal claims under 28 U.S.C. §§ 1331 and 1343.

16.    An actual and justiciable controversy exists between Plaintiffs and Defendants concerning the constitutionality of Defendants' policy and actual practice of denying recognition to ULC Monastery ministers under Va. Code Ann. §§ 20-23 and 20-26, a determination enforceable by Va. Code Ann. § 20-28.  Plaintiffs are entitled to declaratory relief under 28 U.S.C. § 2201 because this controversy presents concrete, adverse legal interests of sufficient immediacy and reality to warrant a declaratory judgment by this Court.  A declaration of rights is necessary to resolve the legal uncertainty created by Defendants' discriminatory enforcement of this statute.

17.    Venue is proper in this Court under 28 U.S.C. § 1391(b) because a substantial part of the events or omissions giving rise to the claims occurred within this District and Division, and because Defendants reside and perform their official duties here.

5

## FACTUAL ALLEGATIONS

### ULC Monastery's Ministry and Outreach

18.    ULC Monastery is a non-denominational church founded to advance religious faith and freedom. Its core tenets are: (1) individuals should strive to do only that which is right, and (2) every person is free to practice their religion in the manner of their choosing, consistent with the First Amendment, so long as that expression is lawful and does not infringe on the rights of others. ULC Monastery's ministry includes supporting charitable organizations and advocating for marriage equality, religious liberty, and other social justice causes.

19.    ULC Monastery was incorporated as a nonprofit religious organization under Washington state law in 2006 and maintains its headquarters in Seattle, Washington.

20.    ULC Monastery ordains all who feel called to serve, based on the belief that the call to ministry comes from within—not from spiritual or governmental gatekeepers like an institutionalized church. To realize this principle, the Church ordains ministers at no cost through an online process and provides formal credentials, spiritual texts, and pastoral guidance by mail. Anyone who accepts the Church's core tenets is welcome to affiliate with the Church, and anyone who affiliates with the Church may become a minister.

21.    The Church expects its ministers to conduct themselves in accordance with its core tenets, but it does not impose doctrinal requirements or operate under a centralized leadership hierarchy. Instead, the Church emphasizes the spiritual equality of all people and affirms the autonomy of its ministers. It recognizes that its ministers may conceive of the divine in diverse ways and may choose to share or keep private their personal understanding of God. Its ministers may accordingly maintain good standing and regular communion with the Church in any manner consistent with the Church's core tenets, not limited to traditional formats such as delivering

6

weekly sermons, at particular locations, to certain bodies of congregants.

22.     ULC Monastery's ministers perform religious rites and ceremonies—including baptisms, weddings, and funerals—throughout the United States and around the world.

23.     ULC Monastery's belief in the legitimacy of every individual's calling to ministry is sincerely held and central to its religious identity.  Its online ordination process reflects its theological conviction that spiritual authority is not conferred by human institutions but recognized through individual conscience and divine inspiration.  The Church regards each ordination as valid and sacred—and certainly not less valid or sacred than the early Christian church's ordination of the apostle Matthias, who was ordained by the throwing of dice.  *See* Holy Bible, Acts 1: 22-26.

24.     As Dr. J. Gordon Melton—a Distinguished Professor of American Religious History at Baylor University who has studied the ULC Monastery—has written, the Church's ecclesiastical position on ordination "came in the aftermath of several centuries of protest by various movements to remove a variety of requirements placed on anyone seeking ordination by older churches," and the ULC Monastery "continued the ecclesiological discussion one step further by removing any doctrinal affirmation or training in particular doctrinal tradition from the requirements of ordination."  Report of J. Gordon Melton, *Universal Life Church Monastery Storehouse v. Nabors*, No. 2:19-cv-00049, ECF No. 298-1 at ¶¶ 6-10 (M.D. Tenn. June 28, 2023).

25.     Courts have long recognized that the Constitution protects sincerity of belief, not institutional structure, and that civil authorities may not second-guess the validity of a religious group's doctrine or ordination methods.  *See United States v. Ballard*, 322 U.S. 78, 86 (1944); *Thomas v. Rev. Bd. of Ind. Emp't Sec. Div.*, 450 U.S. 707, 714 (1981).

26.     ULC Monastery offers its ministers a range of resources through its website, including training materials, guidance on officiating weddings and sermons, and tools for

establishing local ministries. The Church operates a private online social network where ministers can share experiences and discuss spiritual topics. It also hosts a blog featuring sermons and reflections by ULC Monastery ministers, as well as a public forum for discussions of religion, spirituality, and social justice. Through its weekly newsletter *The Visionary*, the Church offers commentary on the role of faith in contemporary society.

27.    ULC Monastery seeks to meet the spiritual needs of its global membership by providing information, support, and opportunities for connection. The Church regards the shared fellowship of its dispersed ministers as no less legitimate a form of worship than the weekly gatherings held in more traditional religious institutions.

### Virginia's Marriage Ordination Law

28.    Virginia regulates the persons who may perform a valid marriage ceremony and sets forth three distinct pathways by which individuals who are not public officials may be authorized to perform marriages, depending on their relationship to a religious society. Two pathways are reserved to ordained ministers of a religious order. The third provides a more burdensome pathway for civil officiants.

29.    First, Section 20-23 of the Virginia Code provides that ministers in regular communion of any religious denomination may solemnize marriages upon proof of their ordination and regular ministry:

> When *a minister of any religious denomination* produces before the circuit court of any county or city in the Commonwealth, or before the judge of such court or before the clerk of such court at any time, *proof of his ordination and of his being in regular communion with the religious society of which he is a reputed member*, or proof that he is commissioned to pastoral ministry or holds a local minister's license and is serving as a regularly appointed pastor in his denomination, *such court, or the judge thereof, or the clerk of such court at any time, may make an order authorizing such minister to celebrate the rites of matrimony in the Commonwealth*. Any order made under this section may be rescinded at any time by the court or by the judge thereof. No oath shall be required of a minister

authorized to celebrate the rites of matrimony, nor shall such minister be considered
an officer of the Commonwealth by virtue of such authorization.

Va. Code Ann. § 20-23 (emphasis added).

30.    Second, for persons who belong to a religious society without a minister—or for
religious societies in which *all* members are equally able to minister the rites and customs of the
religion—section 20-26 of the Virginia Code provides that any person from that society may be
designated as an officiant:

> Marriages between persons belonging to any religious society which has no
> ordained minister, *may be solemnized by the persons and in the manner
> prescribed by and practiced in any such society*.  One person chosen by the society
> shall be responsible for completing the certification of marriage in the same manner
> as a minister or other person authorized to perform marriages; such person chosen
> by the society for this purpose shall be required to execute a bond in the penalty of
> $500, with surety.  No oath shall be required of a person authorized to celebrate the
> rites of marriage, nor shall such person be considered an officer of the
> Commonwealth by virtue of such authorization.

Va. Code Ann. § 20-26 (emphasis added).  Because a Virginia Circuit Court held that this
provision's "bond requirement is clearly unconstitutional" as it unlawfully "favor[s] one type of
religion over another" based on the way a religion ordains ministers, ministers from sects governed
by Va. Code Ann. § 20-26 are "authorized to perform marriage ceremonies without" posting a
bond. *In re Dhanoa*, 86 Va. Cir. 373, 2013 WL 8019586, at *5 (Va. Cir. Ct. Mar. 29, 2013).

31.    Third, persons without a recognized religious affiliation or qualifying government
office may petition for civil celebrant authority and pay associated filing fees to perform marriages
under Va. Code Ann. § 20-25, provided they post a $500 bond and obtain a judicial order:

> Upon petition filed with the clerk and *payment of applicable clerk's fees*, any
> circuit court judge may issue an order authorizing one or more persons resident in
> the circuit in which the judge sits to celebrate the rites of marriage in the
> Commonwealth. *Any person so authorized shall, before acting, enter into bond
> in the penalty of $500, with or without surety, as the court may direct*. . . . Any
> order made under this section may be rescinded at any time.  No oath shall be
> required of a person authorized to celebrate the rites of marriage, nor shall such
> person be considered an officer of the Commonwealth by virtue of such

authorization.

*Id.* (emphasis added). The same section separately provides that certain public officials—

judges, legislators, and statewide elected officers—may solemnize marriages anywhere in

the Commonwealth without a bond or court order. *Id.*

### Virginia's Marriage Licensing Procedures

32. Virginia law requires couples to obtain a marriage license before marrying. Va.

Code Ann. § 20-13. The Clerk or Deputy Clerk of the Circuit Court in each county or city is

responsible for issuing marriage licenses and recording marriage certificates. *See* Va. Code Ann.

§§ 20-14, 20-16. In Augusta County and in the City of Staunton, the Clerk's Office carries out

these duties.

33. A clerk may issue a marriage license only after both parties "state, under oath, the

information required to complete the application for marriage license[s]." Va. Code Ann. § 20-

16.

34. Each marriage license issued by the Clerk's Office includes two marriage

certificates. The officiant must complete and return both certificates to the issuing clerk within

five days of the marriage ceremony. Va. Code Ann. § 20-16; Va. Code Ann. § 32.1-267. The

officiant must also "certify to the facts of marriage." Va. Code Ann. § 32.1-267(C).

35. Clerks have discretion to assess whether an individual qualifies as an authorized

officiant under Va. Code Ann. §§ 20-23 or 20-26. *See also* Va. Op. Att'y Gen. 01-057, 2001 WL

1943930 (Va. AG Nov. 29, 2001).

36. A person who officiates a marriage without legal authority is subject to criminal

prosecution. Knowingly performing a wedding without proper authorization is a Class 1

misdemeanor, punishable by up to one year of imprisonment and a $500 fine. Va. Code Ann.

§ 20-28. This penalty applies even if the marriage itself is recognized. *See Levick v. MacDougall,*

805 S.E.2d 775, 781 (Va. 2017); *see also* Va. Op. Att'y Gen. 251, 1978 WL 25294 (Va. AG Mar. 31, 1978).

### Defendant Landes Discriminates Against Rev. Jaylen Shorts And The Church

37.    Rev. Jaylen N. Shorts is an ordained minister of ULC Monastery residing in Staunton, Virginia.  She completed her ordination through the Church's standard online process. Defendant Augusta County Circuit Court Clerk Landes and his office have denied Rev. Shorts the authority to officiate weddings on equal terms as other religious ministers, solely because she was ordained by the ULC Monastery and not some other preferred denomination.

38.    Rev. Shorts' ordination reflects a sincere and personal religious calling to serve her community—especially individuals who may feel excluded or unwelcome in traditional religious spaces.  Her earliest exposure to religion came from her grandfather, a devout Catholic, and from her father, who also holds strong religious beliefs and encouraged her to attend church while growing up.  Although her family's traditional religious views often conflicted with Rev. Shorts' own evolving beliefs, these experiences left Rev. Shorts searching for a spiritual path that affirmed compassion, inclusion, and personal authenticity—values she now seeks to express in her ministry.

39.    Rev. Shorts first learned about ULC Monastery through a trusted coworker who had spoken positively about his experience with the Church.  Around the same time, Rev. Shorts' mother was preparing to remarry and asked Rev. Shorts to officiate the ceremony in January 2025. Wanting to honor that request in a way that reflected her values, Rev. Shorts began exploring paths to meaningful ordination with a genuine religious order.  After reviewing ULC Monastery's core tenets and discussing them with her mother, Rev. Shorts found that the Church's inclusive, non-denominational approach to ministry resonated with her moral and spiritual intuitions. Rev. Shorts was particularly drawn to the Church's affirmation of spiritual autonomy and its open embrace of

LGBTQ individuals and others who do not identify with traditional faiths.  The Church, she felt, provided her the best vehicle for her own authentic religious expression: one that would enable her to officiate a meaningful wedding ceremony for her mother, yes, but also a vehicle for her own spirituality and ministry in the future.

40.     Rev. Shorts chose to become ordained through ULC Monastery.  Upon completing the Church's online ordination procedure, Rev. Shorts became an ordained minister in good standing and regular communion with the ULC Monastery in November 2024.  The Church sent Rev. Shorts formal credentials including a certificate of ordination, clergy identification, and Church texts on officiating weddings, baptisms, and funerals.  Rev. Shorts reviewed these texts and began formulating ideas for how she would officiate rites, like her mother's marriage, and convey her own spiritual teachings.  She also gained access to the Church's online community of ministers, began receiving the Church's newsletter, and let others in her community know she was available as an ordained spiritual counselor and minister.

41.     But Rev. Shorts's ministry was quickly thwarted.  When Rev. Shorts and her mother contacted the Augusta County Circuit Court Clerk on December 27, 2024, to inquire about the paperwork needed for the wedding ceremony, Defendant Landes and his office refused to recognize Rev. Shorts's ordination.  Clerk staff provided an "IMPORTANT" warning  (shown below) stating that the Augusta County Circuit Court clerks "do not recognize anyone affiliated with the 'Universal Life Church' or any other online ordination certifications, as being authorized to perform marriages."

> **IMPORTANT**
>
> IT IS VERY IMPORTANT THAT THE PERSON PERFORMING THE RITES OF MATRIMONY HAS BEEN
> AUTHORIZED TO DO SO BY A CIRCUIT COURT IN THE COMMONWEALTH OF VIRGINIA.
>
> **NOTE:** AUGUSTA COUNTY CIRCUIT COURT CLERKS OFFICE AND NUMEROUS OTHER COURTS
> CLERKS OFFICES THROUGHOUT THE COMMONWEALTH DO NOT RECOGNIZE ANYONE
> AFFILIATED WITH THE "UNIVERSAL LIFE CHURCH" OR ANY OTHER ONLINE ORDINATION
> CERTIFICATIONS, AS BEING AUTHORIZED TO PERFORM MARRIAGES.

42.    Exercising their discretion to reject Rev. Shorts's application solely because she was ordained by the ULC Monastery, Defendant Landes's office gave Rev. Shorts two options: (i) post a $500 bond for a one-time civil authorization pursuant to Va. Code. Ann. § 20-25, or (ii) substitute another religious officiant from a government-approved preferred list (shown below).

| PERSONS WHO PERFORM MARRIAGES: | |
| --- | --- |
| Russell Heinrich | 540-294-0101 |
| Vicky Terrell | 540-448-3555 |
| Serena Stout | 540-290-2802 |
| Haidyn Wells | 540-885-1205 |
| Bill Dull | 540-886-4371 |
| Greg Tutwiler | 540-433-0360 |
| Spanish Speaking: | |
| Mildred Hoy | 540-256-2581 |
| Tina Abreu | 540-282-7258 |

43.    Reached by counsel for Rev. Shorts on January 6, 2025, and January 8, 2025, Defendant Landes doubled down on his position. He stated in letters dated January 7, 2025, and January 9, 2025, that his office had discretion to enforce Va. Code Ann. §§ 20-23 and 20-26, and that it would exercise that discretion to reject Rev. Shorts's ordination since it was from the ULC

Monastery. Defendant Landes cited a Virginia Attorney General opinion concluding that the application of an earlier version of Va. Code Ann. § 20-23 to the ULC Monastery's predecessor in *Cramer v. Commonwealth*, 214 Va. 561 (1974) justified denying a Church minister comparable authorization. But *Cramer* did not consider—much less resolve—the significant constitutional problems Rev. Shorts presented. *Id.* at 564 ("This case is not one concerning the guarantee of religious freedom as provided in the Constitution").

44.    Counsel raised this and also gave Defendant Landes the option to authorize Rev. Shorts under Va. Code Ann. § 20-26. Counsel explained that the Fairfax County Circuit Court in *In re Dhanoa* compared the Sikhs it authorized under Va. Code Ann. § 20-26 to ULC Monastery ministers because ULC Monastery ministers are also all "equal in religious terms, and each member is equally entitled to officiate religious ceremonies including weddings." 2013 WL 8019586, at *2 (citing authority). But Defendant Landes insisted on denying Rev. Shorts authorization on equal terms with ministers from other religious sects. If Rev. Shorts wished to officiate a wedding in Augusta County, Defendant Landes wrote that she would need to "apply to be a civil marriage celebrant as the law allows through the process of appointment by the Court" under Va. Code Ann. § 20-25.

45.    Rev. Shorts chose not to pursue the temporary civil authorization. Not only did the $500 bond pose a non-trivial financial burden, Rev. Shorts was unwilling to seek secular approval for something she understood to be a spiritual act. She felt uneasy about officiating her mother's wedding under a second-class government-issued permission slip—especially one from a government whose leadership did not necessarily reflect her values of inclusion and equality. For Rev. Shorts, officiating under the ULC Monastery's spiritual tradition felt authentic and aligned with her beliefs; a state-issued license that repudiated the legitimacy of her ordination did not.

14

Accepting a one-time authorization also did not align with her long-term aspirations. Rev. Shorts envisions serving her community as an ordained religious minister beyond just this one ceremony—something a one-time civil authorization would not permit.

46.    After it became clear that Defendant Landes and the Augusta County Circuit Court Clerk's office would not recognize Rev. Shorts's ordination in time for her mother's wedding, the family reluctantly chose an officiant from the approved government list. Unable to perform the ceremony herself, Rev. Shorts felt both heartbroken and sidelined in her spiritual vocation. She had hoped to officiate her mother's wedding as the beginning of a broader ministry—one in which she could serve others in her community who were seeking an inclusive, affirming officiant. But the barriers imposed by Defendant Landes and his office foreclosed that possibility.

47.    Watching a disinterested stranger solemnize her mother's wedding only added insult to injury. With the weather turning chilly, the government-backed officiant chose to remain in her car during the ceremony, pronouncing the couple husband and wife through the window while reading aloud from a script. The result—impersonal, detached, and costing the family between $100 and $200—was a far cry from the heartfelt, spiritually significant service they had envisioned and that Rev. Shorts was prepared to provide.

48.    The effects of Defendant Landes's discrimination against Rev. Shorts are ongoing. Since she became ordained, Rev. Shorts has been approached by multiple members of her community asking whether she could officiate their weddings. These include friends, coworkers, and customers who frequent her place of work. Some of those seeking her services belong to the City of Staunton's closely knit LGBTQ community and have struggled to find officiants who will marry them without judgment or discrimination. Although Rev. Shorts would like to serve this community as a minister, she has been forced to decline these requests, citing her uncertain legal

authority and fearing repercussions under Virginia law, including prosecution by the Prosecuting Defendants under Va. Code Ann. § 20-28.

49.    Rev. Shorts understands that solemnizing a marriage without official authorization from the Clerk Defendants exposes her to criminal penalties enforceable by the Prosecuting Defendants under Va. Code Ann. § 20-28. She understands the Prosecuting Defendants are obligated to enforce these penalties, even though she believes it is wrong.

50.    Rev. Shorts remains committed to serving as a minister in her community. She views solemnizing marriages as a central component of her religious vocation and hopes to become a go-to officiant for inclusive, affirming, LGBTQ-friendly ceremonies in Augusta County and perhaps even the Shenandoah Valley region. But Defendant Landes's discriminatory enforcement of Virginia's marriage laws has deterred Rev. Shorts from exercising her faith freely and fully.

51.    Defendant Landes's refusal to recognize ULC Monastery ordinations has denied Rev. Shorts the ability to act on her sincere religious beliefs. It has also deprived others in her community—particularly those without ties to traditional denominations—of access to a minister who reflects and respects their values. And it has relegated the Church to second-class status, damaging its reputation and undercutting its religious mission.

52.    Rev. Shorts stands ready and willing to officiate weddings in accordance with her religious convictions. Defendant Landes's discriminatory enforcement of state law—and the attendant risks of prosecution by the Prosecuting Defendants under Va. Code Ann. § 20-28—bars Rev. Shorts from doing so.

### The Clerk Defendants Discriminate Against Rev. Davis And The Church

53.    Plaintiff Rev. Michael E. Davis is an ordained minister of the ULC Monastery who resides in the City of Staunton. The Clerk Defendants have denied him the authority to officiate weddings on equal terms as other religious ministers, solely because he was ordained by the ULC

Monastery and not some other preferred denomination.

54.    For Rev. Davis, ministry is a sacred religious vocation.  In addition to his full-time work supporting his family as a production operator and relief manager at the Hershey plant in Stuart's Draft, Virginia, Rev. Davis considers it part of his calling to officiate weddings, baptisms, funerals, and to preach "the Word."  He does not see these acts as civic duties but as expressions of his faith.  Born in New York and raised in a deeply religious family of church deacons and deaconesses, Rev. Davis considers himself the legacy of a spiritual lineage that shaped him from childhood.  Rev. Davis's faith was sparked by a formative moment as a child, when, alone under the stars at his grandparents' house, he felt what he describes as the hand of God on his shoulder.

55.    That calling has propelled Rev. Davis throughout his life.  But while Rev. Davis had always been drawn toward ministry, he originally doubted whether he was cut out for it. Rev. Davis thus for many years pursued his spiritual journey as a parishioner and eventually as a deacon at the Mount Salem Baptist Church.  As time went on, however, Rev. Davis felt called to do more.  At the urging of his family and spiritual mentors, Rev. Davis eventually overcame his doubts and came to believe that "God doesn't call the qualified, He qualifies the called.".

56.    It was around this time that Rev. Davis discovered the ULC Monastery through posts he read on Facebook.  He interpreted this as a sign.  After prayerful consideration, Rev. Davis felt divinely inspired to begin his own ministry through the Church.  The Church's message of inclusivity and spiritual equality resonated with his belief that "Jesus Christ is for everyone."  So in September 2024, Rev. Davis completed the Church's online ordination process and became an ordained ULC Monastery minister in regular communion with the Church community.  As part of his ordination, Rev. Davis received formal credentials, including a certificate of ordination, clergy identification, and Church texts on officiating weddings, baptisms, and funerals.

57.     Rev. Davis has been invited to lead worship in his capacity as a ULC Monastery minister.  And after a change in the leadership and spiritual direction of the Mount Salem Baptist Church also in 2024, Rev. Davis began focusing on at-home Bible study and his own personal ministry through the ULC Monastery.  Rev. Davis considers ministry the next phase of his life's purpose, and looks forward to transitioning into full-time ministry after he retires.

58.     Officiating weddings is part of the ministry Rev. Davis wishes to offer his spiritual community.  It was accordingly profoundly moving to Rev. Davis when Rev. Davis's son asked him to officiate his wedding then-scheduled for Augusta County in June 2025.  Rev. Davis viewed this request as a sacred affirmation of his role not only as a parent, but as a minister.

59.     Rev. Davis promptly took steps to register to officiate the wedding.  But the Clerk Defendants each refused to recognize his ordination, or permit him to serve as a religious officiant, because his ordination was from the ULC Monastery.  First, on October 4, 2024, Rev. Davis appeared before Augusta County Circuit Court Clerk's office run by Defendant Landes with his ULC Monastery credentials, only to be told that Virginia does not recognize the ULC Monastery so he would not be permitted to officiate any wedding as a minister under Va. Code Ann. § 20-23. Defendant Landes and his office provided Rev. Davis with the same warning letter they provided Rev. Shorts.  Undeterred, Rev. Davis subsequently appeared before the City of Staunton Circuit Court Clerk's Office on October 15, 2024, but clerks in that office reporting to Defendant Falls also stated that Rev. Davis was not eligible to perform marriages under Va. Code Ann. § 20-23 solely because of his ULC Monastery ordination.  Defendant Falls's staff explained that Rev. Davis's only option was to petition for a one-time civil authorization under Va. Code Ann. § 20-25, which requires a $500 bond and a judge's order of authorization.

60.     Rev. Davis declined to seek civil authorization.  He does not view himself as a

temporary officiant or civil celebrant, but as a bona fide minister acting in accordance with a sincere religious calling. Seeking secular approval would diminish that calling by stripping it of sacred meaning.

61.    The Clerk Defendants' refusal to recognize ULC Monastery ministers under Va. Code Ann. § 20-23 or Va. Code Ann. § 20-26 has prevented Rev. Davis from officiating his son's wedding on equal terms as other religious ministers ordained by preferred religious societies. Rev. Davis's son has postponed his wedding to September 2025, hoping that Rev. Davis will be able to officiate in his capacity as a ULC Monastery minister, not a civil celebrant. Rev. Davis remains ready and willing to fulfill this role, but is barred from doing so under the Clerk Defendants' interpretation of Virginia law.

62.    Rev. Davis has also had to decline another request to officiate a June 2025 wedding for a coworker's family member. Rev. Davis had to explain that his credentials are not recognized by the Clerk Defendants. The loss of this opportunity to minister—particularly in moments of joy and commitment—has left him feeling stifled, demoralized, and inferior.

63.    Rev. Davis also understands that solemnizing a marriage without official authorization from the Clerk Defendants exposes him to criminal penalties enforceable by the Prosecuting Defendants under Va. Code Ann. § 20-28. He understands the Prosecuting Defendants are obligated to enforce these penalties, even though he believes it is wrong.

64.    The Clerk Defendants' policies have thus prevented Rev. Davis from carrying out a core religious practice and denied him equal treatment as a minister, damaging the Church's reputation, and interfering with its religious mission.

65.    Rev. Davis wishes to officiate weddings as a minister in Augusta County and the City of Staunton consistent with his and the Church's religious tenets. Only the Clerk Defendants'

discriminatory interpretation and application of Virginia law, which also has the effect of exposing

Rev. Davis to criminal penalties, prevents him from doing so.

## COUNT I
### Violation of the Establishment Clause of the First Amendment
### (As Applied)

66.    Plaintiffs incorporate by reference the allegations of the preceding paragraphs.

67.    The First Amendment—as incorporated and applied to the states through the

Fourteenth Amendment—provides that "Congress shall make no law respecting an establishment

of religion." U.S. Const. amend. I.

68.    The "clearest command of the Establishment Clause is that one religious

denomination cannot be officially preferred over another." *Larson*, 456 U.S. at 244. The Supreme

Court has thus consistently held that a government "may not aid, foster, or promote one religion

or religious theory against another," *Epperson v. Arkansas*, 393 U.S. 97, 104 (1968), and "must"

remain "neutral when it comes to competition between sects." *Zorach v. Clauson*, 343 U.S. 306,

314 (1952).

69.    The Clerk Defendants violate the Establishment Clause by interpreting and

applying Va. Code Ann. §§ 20-23 and 20-26 to categorically deny ULC Monastery ministers the

authority to solemnize marriages as religious officiants, solely because they were ordained by and

are in regular communion with the ULC Monastery and not another approved religious society.

This conduct impermissibly prefers certain denominations over others.

70.    The Clerk Defendants violated the Establishment Clause when they interpreted and

applied Va. Code Ann. §§ 20-23 and 20-26 to deny Plaintiffs Rev. Davis and Rev. Shorts the

authority to solemnize marriages as religious officiants solely because they were ordained by and

are in regular communion with the ULC Monastery and not another approved religious society.

This conduct impermissibly preferred certain denominations over others.

71.     The Prosecuting Defendants' unrenounced obligation to enforce Va. Code Ann. § 20-28 against ULC Monastery ministers who perform marriage rites that are prohibited solely because the Clerk Defendants do not recognize the ULC Monastery reinforces an impermissible denominational preference that violates the Establishment Clause.

72.     No rational much less compelling governmental interest justifies denying ULC Monastery or its ordained and regular ministers the same recognition afforded to other religious societies and their ministers, and neither the Clerk Defendants' discriminatory enforcement of Va. Code Ann. §§ 20-23 and 20-26, nor the Prosecuting Defendants' unrenounced obligation to enforce Va. Code Ann. § 20-28, is narrowly tailored to serve any legitimate government interest.

73.     Defendants' enforcement of Va. Code Ann. §§ 20-23, 20-26, and 20-28 is done under color of state law, and in derogation of Plaintiffs' rights guaranteed under federal law, and therefore violates 42 U.S.C. § 1983, entitling Plaintiffs to declaratory and injunctive relief, as well as costs and attorneys' fees as provided by 42 U.S.C. § 1988.

74.     Plaintiffs have and will continue to suffer the irreparable loss of their First Amendment rights as a result of Defendants' actions until this Court enjoins them.

### COUNT II
### Violation of the Free Exercise Clause of the First Amendment
### (As Applied)

75.     Plaintiffs incorporate by reference the allegations of the preceding paragraphs.

76.     The First Amendment—as incorporated and applied to the states through the Fourteenth Amendment—provides that "Congress shall make no law . . . prohibiting the free exercise [of religion]." U.S. Const. amend. I.

77.     Many of Plaintiff ULC Monastery's ministers, including Plaintiffs Rev. Davis and Rev. Shorts, choose to exercise their religion by officiating marriage ceremonies. The Clerk Defendants' interpretation and application of Va. Code Ann. §§ 20-23 and 20-26 to deny ULC

Monastery minsters in regular communion with the Church the authority to perform marriages as religious officiants accordingly places an impermissible burden on Plaintiffs' religious practice in violation of the Free Exercise Clause.

78.     The Prosecuting Defendants' unrenounced obligation to enforce Va. Code Ann. § 20-28 based on the Clerk Defendants' determinations under Va. Code Ann. §§ 20-23 and 20-26 likewise places and reinforces an impermissible burden on Plaintiffs' religious practice that violates the Free Exercise Clause.

79.     Defendants' actual and threatened enforcement of Va. Code Ann. §§ 20-23, 20-26, and 20-28 in these respects is neither neutral nor of general application.  It is not neutral because it disfavors certain religious beliefs and practices, and it is not generally applicable because it selectively withholds recognition from ministers of disfavored faiths while extending it to others. Government action that targets certain religious exercise for adverse treatment in this way is subject to strict scrutiny.  *See Church of the Lukumi Babalu Aye, Inc. v. City of Hialeah*, 508 U.S. 520, 531–32 (1993).

80.     No rational much less compelling governmental interest justifies the imposition of these burdens on Plaintiffs' religious exercise, and neither the Clerk Defendants' enforcement of Va. Code Ann. §§ 20-23 and 20-26, nor the Prosecuting Defendants' enforcement of Va. Code Ann. § 20-28, is narrowly tailored to serve any legitimate government interest.

81.     Defendants' enforcement of Va. Code Ann. §§ 20-23, 20-26, and 20-28 is done under color of state law, and in derogation of Plaintiffs' rights guaranteed under federal law, and therefore violates 42 U.S.C. § 1983, entitling Plaintiffs to declaratory and injunctive relief, as well as costs and attorneys' fees as provided by 42 U.S.C. § 1988.

82.     Plaintiffs have and will continue to suffer the irreparable loss of their First

Amendment rights as a result of Defendants' actions unless and until this Court enters an order enjoining them.

## COUNT III
### Violation of the Equal Protection Clause of the Fourteenth Amendment
### (As Applied)

83.     Plaintiffs incorporate by reference the allegations of the preceding paragraphs.

84.     The Equal Protection Clause of the Fourteenth Amendment provides that states may not "deny to any person within [their] jurisdiction the equal protection of the laws." U.S. Const. amend. XIV, § 1.   The Equal Protection Clause prohibits intentional discrimination against similarly situated individuals and prohibits state action that burdens fundamental rights, including religious freedom.  Discrimination based on religious affiliation must survive strict scrutiny.

85.     The Clerk Defendants intentionally discriminate against ULC Monastery and its ministers based on their religious affiliation and denominational identity.  Enforcing Va. Code Ann. §§ 20-23 and 20-26 to prohibit ULC Monastery ministers from solemnizing weddings, while permitting similarly situated ministers of other religions or religious denominations to do so, singles out the ULC Monastery and its ministers for disfavored treatment.  So does the Prosecuting Defendants' unrenounced obligation to enforce Va. Code Ann. § 20-28 against the ULC Monastery and its ministers based on the Clerk Defendants' intentional discrimination.

86.     Defendants' discrimination against ULC Monastery and its ministers is unsupported by any rational basis, much less narrowly tailored to advance a compelling government interest.

87.     Defendants' enforcement of Va. Code Ann. §§ 20-23, 20-26, and 20-28 is done under color of state law, and in derogation of Plaintiffs' rights guaranteed under federal law, and therefore violates 42 U.S.C. § 1983, entitling Plaintiffs to declaratory and injunctive relief, as well as costs and attorneys' fees as provided by 42 U.S.C. § 1988.

88.     Plaintiffs have and will continue to suffer the irreparable loss of their constitutional rights as a result of Defendants' actions unless and until this Court enters an order enjoining them.

## COUNT IV
### Violation of the Free Speech Clause of the First Amendment
### (As Applied)

89.     Plaintiffs incorporate by reference the allegations of the preceding paragraphs.

90.     The First Amendment—as incorporated and applied to the states through the Fourteenth Amendment—provides that "Congress shall make no law . . . abridging the freedom of speech." U.S. Const. amend. I.

91.     Defendants' actual and threatened enforcement of Va. Code Ann. §§ 20-23, 20-26, and 20-28 against the ULC Monastery and its ministers burdens speech based on its content and viewpoint, and is accordingly subject to strict scrutiny, *Reed v. Town of Gilbert, Ariz.*, 576 U.S. 155, 163 (2015), for several independent reasons.

92.     ***Unconstitutional Condition.***  Government officials "may not deny a benefit to a person on a basis that infringes his constitutionally protected interests," even when the person "has no 'right' to [the] valuable governmental benefit and even though the government may deny him the benefit for any number of reasons" not based on protected activity. *Perry v. Sindermann,* 408 U.S. 593, 597 (1972); *see also Agency for Int'l Dev. v. All. for Open Soc'y Int'l, Inc.*, 570 U.S. 205, 214 (2013). Defendants' actual and threatened enforcement of Va. Code Ann. §§ 20-23, 20-26, and 20-28 against the ULC Monastery and its ministers unconstitutionally conditions government benefits—including both (i) an ordained minister's authority to administer recognized marriage rites, and (ii) a marrying couple's right to have an ordained religious officiant solemnize their wedding—upon associating with the government's preferred religious societies. This attempt to "prescribe what shall be orthodox in politics, nationalism, religion, or other matters of opinion" violates the First Amendment. *W. Va. State Bd. of Educ. v. Barnette*, 319 U.S. 624, 642 (1943).

93. ***Viewpoint-Based Restriction.*** Defendants' actual and threatened enforcement of Va. Code Ann. §§ 20-23, 20-26, and 20-28 against the ULC Monastery and its ministers imposes a viewpoint-based restriction on speech by burdening ULC Monastery's view that online ordination is valid and sacred, and that a minister may be in regular communion with a religious society in ways that depart from traditional methods. ULC Monastery theology holds that spiritual authority derives from individual conscience rather than institutional hierarchy. By denying legal recognition to ministers ordained through expressive acts recognized by the Church, and who choose to be in regular communion with the Church in bespoke ways that align with Church teachings, Defendants' enforcement of Va. Code Ann. §§ 20-23, 20-26, and 20-28 penalizes the Church's theological perspective while privileging the views of denominations that adhere to more traditional, state-favored models. This preference for one viewpoint over another violates the First Amendment. *See Rosenberger v. Rector & Visitors of Univ. of Va.*, 515 U.S. 819, 828–29 (1995).

94. ***Speaker-Based Restriction.*** Defendants' actual and threatened enforcement of Va. Code Ann. §§ 20-23, 20-26, and 20-28 against the ULC Monastery and its ministers restricts speech on an impermissible speaker basis because it denies legal effect to religious expression from a disfavored class of speakers: those ordained through ULC Monastery's online ordination process. The act of ordination communicates core theological beliefs about ministry, legitimacy, and spiritual authority. By conditioning the legal recognition of this expressive act on the speaker's religious affiliation and method of ordination, the statute draws impermissible distinctions between who may speak and whose speech the state will acknowledge. Such speaker-based distinctions— particularly when tied to religious identity—are presumptively unconstitutional. *See Turner Broad. Sys., Inc. v. FCC*, 512 U.S. 622, 645 (1994).

95. ***Weddings As Expressive Conduct.*** Officiating a wedding is protected expressive

conduct that communicates "particularized message[s]" about commitment, spirituality, and the couple's relationship to each other and to their community. *Kaahumanu v. Hawaii*, 682 F.3d 789, 799 (9th Cir. 2012). For ULC Monastery ministers, officiating weddings is a core form of religious and expressive practice—one that reflects their identity, values, and theology. By excluding ULC Monastery ministers from solemnizing marriages, Defendants have burdened and chilled Plaintiffs' protected speech and expressive conduct.

96.     Defendants' actual and threatened enforcement of Va. Code Ann. §§ 20-23, 20-26, and 20-28 against the ULC Monastery and its ministers do not serve any legitimate government interest, much less accomplish a compelling governmental interest using the least restrictive means as strict scrutiny requires. *See United States v. Playboy Ent. Grp., Inc.*, 529 U.S. 803, 813 (2000).

97.     Defendants' enforcement of Va. Code Ann. §§ 20-23, 20-26, and 20-28 is done under color of state law, and in derogation of Plaintiffs' rights guaranteed under federal law, and therefore violates 42 U.S.C. § 1983, entitling Plaintiffs to declaratory and injunctive relief, as well as costs and attorneys' fees as provided by 42 U.S.C. § 1988.

98.     Plaintiffs have and will continue to suffer the irreparable loss of their constitutional rights as a result of Defendants' actions unless and until this Court enters an order enjoining them.

### PRAYER FOR RELIEF

99.     Plaintiffs respectfully request that the Court grant the following relief:

a.     Judgment declaring that the Clerk Defendants' interpretation and application of Va. Code Ann. §§ 20-23 and 20-26 to deny authority to officiate weddings to ULC Monastery ministers—including Rev. Shorts and Rev. Davis—based on those ministers' ordination with ULC Monastery violates the First and Fourteenth Amendments;

26

b.    A permanent injunction prohibiting Clerk Defendants from denying ULC Monastery ministers, including Rev. Shorts and Rev Davis, the authority to solemnize marriages under Va. Code Ann. §§ 20-23 or 20-26 based on their ordination with the ULC Monastery;

c.    Judgment declaring that the Prosecuting Defendants' enforcement of Va. Code. Ann. § 20-28 against ULC Monastery ministers—including Rev. Shorts and Rev. Davis—based on those ministers' ordination with ULC Monastery violates the First and Fourteenth Amendments;

d.    A permanent injunction prohibiting Prosecuting Defendants from enforcing Va. Code Ann. § 20-28 against ordained ULC Monastery ministers, including Rev. Shorts and Rev Davis, based on their ordination with the ULC Monastery;

e.    A judgment awarding Plaintiffs their costs and attorneys' fees in accordance with law, including but not limited to 42 U.S.C. § 1988; and

f.    Any and all other such relief as the Court deems just and proper.

DATED this 22nd day of May 2025.

By /s/____Adam S. Sieff_____
        Adam S. Sieff

DAVIS WRIGHT TREMAINE LLP
Ambika Kumar (pro hac vice forthcoming)
Bianca G. Chamusco (pro hac vice forthcoming)
920 Fifth Avenue, Suite 3300
Seattle, Washington 98104
Tel: (206) 622-3150
ambikakumar@dwt.com
biancachamusco@dwt.com

DAVIS WRIGHT TREMAINE LLP
Adam S. Sieff (pro hac vice forthcoming)
350 South Grand Avenue, 27th Floor
Los Angeles, California 90071
Tel: (213) 633-8618
adamsieff@dwt.com

By /s/____Paul G. Beers_____
        Paul G. Beers

GLENN FELDMANN DARBY &
GOODLATTE
Paul G. Beers (VA Bar # 26725)
111 Franklin Road SE #200
Roanoke, Virginia 24011
Tel: (540) 224-8000
pbeers@glennfeldmann.com

*Attorneys for Plaintiffs Universal Life Church
Monastery Storehouse, Rev. Jaylen N. Shorts, and
Rev. Michael E. Davis*