UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF VIRGINIA
HARRISONBURG DIVISION

| | |
|---|---|
| UNIVERSAL LIFE CHURCH MONASTERY STOREHOUSE; REV. JAYLEN N. SHORTS, an individual; and REV. MICHAEL E. DAVIS, an individual,<br><br>                Plaintiffs,<br><br>v.<br><br>R. STEVEN LANDES, in his official capacity as Clerk of Circuit Court for Augusta County; TIM A. MARTIN, in his official capacity as Commonwealth's Attorney for Augusta County; STACI N. FALLS, in her official capacity as Clerk of Circuit Court for the City of Staunton; and JEFFREY GAINES, in his official capacity as Commonwealth's Attorney for the City of Staunton,<br><br>                Defendants. | Case No. 5:25-cv-47 |

**COMMONWEALTH'S ATTORNEY DEFENDANTS'
MEMORANDUM IN SUPPORT OF MOTION TO DISMISS
<u>PURSUANT TO FEDERAL RULE OF CIVIL PROCEDURE 12(b)(1)</u>**

Defendants Tim A. Martin and Jeffrey Gaines, Commonwealth's Attorneys for Augusta County and the City of Staunton, Virginia ("CA Defendants"), by counsel, submit this Memorandum in Support of their Motion to Dismiss Pursuant to Federal Rule of Civil Procedure (12)(b)(1).

## <u>INTRODUCTION</u>

Virginia's statutory scheme governing marriage contains a misdemeanor criminal enforcement provision which establishes a maximum penalty of $500 and maximum sentence of confinement in jail of one year for "knowingly perform[ing] the ceremony of marriage without

lawful license, or officiat[ing] in celebrating the rites of marriage without being authorized by law to do so." Va. Code § 20-28.

Plaintiffs, the Universal Life Church Monastery Storehouse ("ULC Monastery") and two of its individual ministers, Rev. Jaylen N. Shorts ("Shorts") and Rev. Michael E. Davis ("Davis"), seek a judgment declaring that the CA Defendants' enforcement of this provision is unconstitutional and a permanent injunction prohibiting its enforcement.

Their suit against the CA Defendants, however, lies outside the limited jurisdiction of this Court. Because there is no credible threat of enforcement, Plaintiffs fail to establish an injury in fact and lack standing to sue. For the same reason, they cannot invoke the *Ex parte Young* exception to state sovereign immunity required for them to bring this suit seeking prospective injunctive relief against state officials in federal court.

Accordingly, Plaintiffs' suit against the CA Defendants should be dismissed for lack of jurisdiction.

## BACKGROUND AND FACTUAL ALLEGATIONS

Plaintiffs bring claims for declaratory and injunctive relief against the CA Defendants, arguing that two statutes in Virginia's statutory scheme governing marriage that provide state authorization to perform a valid marriage ceremony are unconstitutional as applied to them. They assert violations of the Establishment (Count I), Free Exercise (Count II), and Free Speech (Count IV) Clauses of the First Amendment in addition to asserting a violation of the Equal Protection Clause of the Fourteenth Amendment (Count III). Compl., ECF No. 1, ¶¶ 66–98.

Based on the CA Defendants' purported "unrenounced obligation" to enforce Virginia Code § 20-28, *id.* ¶¶ 71–72, 78, 85, a statute that makes it a misdemeanor to knowingly perform a marriage ceremony or officiate in the rites of marriage without legal authorization to do so,

2

Plaintiffs seek a judgment declaring that the CA Defendants' alleged enforcement of Code § 20-28 against ULC Monastery ministers, including Revs. Shorts and Davis, violates the First and Fourteenth Amendments, and a permanent injunction prohibiting the CA Defendants from prosecuting ordained ULC Monastery ministers, including Revs. Shorts and Davis. *Id.*, ¶ 99(c)–(d).

## I.     Statutory Background

For individuals who are not public officials,[1] Virginia's statutory scheme governing marriage provides three avenues to obtain state authorization to perform a valid marriage ceremony.

The first, available for "a minister of any religious denomination," provides that a circuit court, one of its judges, or the clerk of the circuit court "may make an order authorizing such minister to celebrate the rites of matrimony in the Commonwealth" upon "proof of … ordination and of … being in regular communion with the religious society of which he [or she] is a reputed member." Code § 20-23.[2] Thus, ministers of any religious denomination may obtain authorization to perform the rites of marriage in Virginia upon providing proof of their ordination and "being in regular communion" with their religious denomination. *Id.*

The second is available for "Persons other than ministers"—i.e., civil celebrants. Code § 20-25. Under this statute, upon filing a petition with the circuit court clerk, paying applicable filing

---

[1] Virginia law allows judges and justices, legislators, the Governor and Lieutenant Governor, Attorney General, and clerks of circuit courts to celebrate the rites of marriage without posting a bond or obtaining an order of authorization. Va. Code § 20-25.

[2] While the statute also allows for "a minister of any religious denomination" to obtain authorization upon "proof that he [or she] is commissioned to pastoral ministry or holds a local minister's license and is serving as a regularly appointed pastor in his denomination," Code § 20-23, that alternative avenue to authorization is not at issue in this case.

fees, and posting a $500 bond, any person may obtain an order from a circuit court judge authorizing them "to celebrate the rites of marriage in the Commonwealth." *Id.*

The third is available for individuals who are "members of [a] religious society having no minister." Code § 20-26. Here, members of religious societies that have no ordained minister can be married "by the persons and in the manner prescribed by and practiced in any such society" provided that the society chooses one person to complete the certification of marriage and who posts a $500 bond with surety. *Id.* Contrary to the assertions of Plaintiffs, the plain text of § 20-26 does not provide for the authorization of individuals in "religious societies in which all members are equally able to minister the rites and customs of the religion." Compl., ¶ 30. Rather, § 20-26 only refers to "Marriage between members of [a] religious society having no minister" and "Marriages between persons belonging to any religious society which has no ordained minister." Code § 20-26.

The statutory scheme contains a criminal enforcement provision for any person who knowingly performs a marriage ceremony or officiates in the rites of marriage without legal authorization to do so. Code § 20-28. Because the statute establishes a maximum sentence of confinement in jail of one year and maximum fine of $500, *id.*, it is an unclassified misdemeanor under Virginia law. Code § 18.2-8 (offenses punishable by confinement in state correctional facility, as opposed to jail, are felonies, and all other offenses are misdemeanors).

## II. The ULC Monastery

The "ULC Monastery is a non-denominational religious organization and a nonprofit corporation," Compl. ¶ 7, that "ordains [as ministers] all who feel called to serve," providing formal credentials online at no cost to any applicant "who accepts the Church's core tenets" of "(1)

4

individuals should strive to do only that which is right, and (2) every person is free to practice their religion in the manner of their choosing." *Id.*, ¶¶ 18, 20.

ULC Monastery "expects its ministers to conduct themselves in accordance with its core tenets, but it does not impose doctrinal requirements or operate under a centralized leadership hierarchy." *Id.*, ¶ 21. Once ordained online, "[i]ts ministers may accordingly maintain good standing and regular communion with the Church in any manner consistent with the Church's core tenets, not limited to traditional formats such as delivering weekly sermons, at particular locations, to certain bodies of congregants." *Id.* Instead, ministers "choose to be in regular communion with the Church in bespoke ways" that are unspecified because they may be unique to each minister. *Id.*, ¶ 93. Furthermore, ULC Monastery "remov[ed] any doctrinal affirmation or training in particular doctrinal tradition from the requirements of ordination." *Id.*, ¶ 24 (citation and internal quotation marks omitted).

### A. Plaintiff Rev. Jaylen N. Shorts

Rev. Shorts is an ordained minister of the ULC Monastery who resides in Staunton, Virginia. *Id.*, ¶ 37. Shorts first learned about the ULC Monastery from a coworker, and after Shorts's mother asked Shorts to officiate the mother's upcoming marriage in January 2025, Shorts chose to become ordained through ULC Monastery. *Id.*, ¶¶ 39–40. Shorts did so in November 2024 by "completing the Church's online ordination procedure." *Id.*, ¶ 40. The only requirement Shorts had to meet was "accept[ing] the Church's [two] core tenets," *id.* ¶ 20, that "individuals should strive to do only that which is right" and "every person is free to practice their religion in the manner of their choosing." *Id.*, ¶ 18.

When Shorts inquired with the Augusta County Circuit Court Clerk, R. Steven Landes, regarding "the paperwork needed for [her mother's] wedding ceremony," Landes informed her that

5

his Office did not "recognize anyone affiliated with the 'Universal Life Church' or any other online ordination certifications, as being authorized to perform marriages." *Id.*, ¶ 41 (all caps omitted). Because Landes did not recognize Shorts's qualification under § 20-23, which is reserved for ordained ministers, his office gave Shorts the option of posting a $500 bond for a one-time civil authorization pursuant to Virginia Code § 20-25 or choosing another officiant from a list that the Clerk's Office provided. *Id.*, ¶ 42.

Shorts's counsel then suggested that Landes could also authorize Shorts under Code § 20-26 notwithstanding that § 20-26 only applies to "persons belonging to any religious society which has no ordained minister," *supra* at 4, in contrast with the ULC Monastery, in which *all* members are ministers. Compl. ¶ 44. Landes responded by explaining that if Shorts wanted to officiate a marriage, she would have to do so under § 20-25. *Id.* Under the circumstances, Shorts's family ultimately chose to have an officiant from the list that the Clerk's Office provided preside over her mother's wedding. *Id.*, ¶¶ 46–47.

Shorts asserts that in addition to her mother, she "has been approached by multiple members of her community asking whether she could officiate their weddings." *Id.*, ¶ 48. Shorts broadly claims that she "stands ready and willing to officiate weddings in accordance with her religious convictions." *Id.*, ¶ 52.

B. **Plaintiff Rev. Michael E. Davis**

Like Shorts, Plaintiff Rev. Michael E. Davis is an ordained minister of the ULC Monastery who resides in Staunton, Virginia. *Id.*, ¶ 53. Davis completed the Monastery's online process and became one of its ordained ministers in September 2024. *Id.*, ¶ 56. When Davis's son asked him to officiate the son's wedding scheduled for Augusta County in June 2025, *id.* ¶ 58, like Shorts, Davis appeared before Mr. Landes's Office in Augusta County in October 2024 to obtain legal

6

authorization to do so. *Id.*, ¶ 59. Mr. Landes responded to Davis consistently with his response to Shorts: he informed Davis that his Office did not recognize persons ordained with the "Universal Life Church" or persons who otherwise received certifications of ordinations online as being authorized to officiate marriages. *Id.*

Davis then appeared before the City of Staunton Circuit Court Clerk's Office and was told that if Davis wanted to officiate his son's wedding, he needed to petition for a one-time civil authorization under Virginia Code § 20-25 and post a $500 bond. *Id.* Davis's son decided to postpone his wedding to September 2025, hoping that his father might obtain authorization in his capacity as a ULC Monastery minister. *Id.*, ¶ 61. Davis asserts that he "remains ready and willing to fulfill this role, but is barred from doing so under the Clerk Defendants' interpretation of Virginia law." *Id.*

Outside of his son's rescheduled wedding, Davis asserts that he "has also had to decline another request to officiate a June 2025 wedding for a coworker's family member," *id.* ¶ 62, and that he generally "wishes to officiate weddings as a minister in Augusta County and the City of Staunton consistent with his and the Church's religious tenets." *Id.*, ¶ 65.

## **LEGAL STANDARD**

The plaintiff bears the burden of proving subject matter jurisdiction in response to a motion to dismiss under Federal Rule of Civil Procedure 12(b)(1). *Piney Run Pres. Ass'n v. Cnty. Comm'rs*, 523 F.3d 453, 459 (4th Cir. 2008) (citation omitted). This is because "[i]t is to be presumed that a cause lies outside th[e] limited jurisdiction" of the federal courts. *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994) (citation omitted).

"[W]hen a defendant challenges subject matter jurisdiction via a Rule 12(b)(1) motion to dismiss, the district court may regard the pleadings as mere evidence on the issue and may consider

7

evidence outside the pleadings without converting the proceeding to one for summary judgment." *Mowery v. Nat'l Geospatial-Intelligence Agency*, 42 F.4th 428, 433 (4th Cir. 2022) (citation modified). In such a circumstance, "courts may consider affidavits and other extrinsic information to determine whether subject matter jurisdiction exists." *Saval v. BL Ltd.*, 710 F.2d 1027, 1029 n.2 (4th Cir. 1983).

"Dismissal should be granted 'only if the material jurisdictional facts are not in dispute and the moving party is entitled to prevail as a matter of law.'" *Mowery*, 42 F.4th at 434 (quoting *Balfour Beatty Infrastructure, Inc. v. Mayor of Balt.*, 855 F.3d 247, 251 (4th Cir. 2017)).

## ARGUMENT

### I. Plaintiffs cannot establish injury in fact, so lack standing to pursue their as-applied challenge to Virginia Code § 20-28.

Federal court jurisdiction is limited to "Cases" and "Controversies." U.S. Const. art. III, § 2. This "case or controversy requirement maintains proper separation of powers between courts and legislatures, provides courts with arguments sharpened by the adversarial process, and narrows the scope of judicial scrutiny to specific facts." *Doe v. Duling*, 782 F.2d 1202, 1205 (4th Cir. 1986).

The party seeking to invoke federal jurisdiction bears the burden of establishing three elements to satisfy the "irreducible constitutional minimum of standing": (1) "injury in fact—an invasion of a legally protected interest which is (a) concrete and particularized, and (b) actual or imminent, not conjectural or hypothetical"; (2) causation, which requires "a causal connection between the injury and the conduct complained of"; and (3) redressability, that "it must be likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision." *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560–61 (1992) (citation modified).

Article III's standing requirement applies with equal force to actions, such as this one, brought under the Declaratory Judgment Act. 28 U.S.C. § 2201(a) ("In a *case of actual controversy*

8

within its jurisdiction . . . any court of the United States . . . may declare the rights and other legal relations of any interested party seeking such declaration….." (emphasis added)); *MedImmune, Inc. v. Genentech, Inc.*, 549 U.S. 118, 126–27 (2007) (citation omitted) ("[T]he phrase 'case of actual controversy' in the [Declaratory Judgment] Act refers to the type of 'Cases' and 'Controversies' that are justiciable under Article III.").

### A. To meet the injury-in-fact requirement in their pre-enforcement challenge, Plaintiffs must establish a credible threat of prosecution.

Plaintiffs do not have to subject themselves to criminal liability before challenging a statute under the Declaratory Judgment Act, but to satisfy the injury-in-fact requirement and "bring a cognizable pre[-]enforcement challenge, a party must allege 'an intention to engage in a course of conduct arguably affected with a constitutional interest, but proscribed by a statute, and there exists a credible threat of prosecution thereunder.'" *Md. Shall Issue, Inc. v. Hogan*, 971 F.3d 199, 217 (4th Cir. 2020) (quoting *Susan B. Anthony List v. Driehaus*, 573 U.S. 149, 159 (2014)). In First Amendment cases, "injury-in-fact may [also] be established … by … a sufficient showing of self-censorship which occurs when a claimant is chilled from exercising his right to free expression." *AFGE v. Office of Special Counsel*, 1 F.4th 180, 187 (4th Cir. 2021) (citation modified); *Abbott v. Pastides*, 900 F.3d 160, 176 (4th Cir. 2018) (citations omitted).

"Either way, a credible threat of enforcement is critical; without one, a putative plaintiff can establish neither a realistic threat of legal sanction if he engages in the speech in question, nor an objectively good reason for refraining from speaking and 'self-censoring' instead." *Abbott*, 900 F.3d at 176 (citations omitted); *Duling*, 782 F.2d at 1205 (citations omitted) ("The Supreme Court has made it abundantly clear that one challenging the validity of a criminal statute must show a threat of prosecution under the statute to present a case or controversy."). Even threats of prosecution made in the past may be insufficient to confer standing, and a plaintiff "must show a

9

threat of prosecution that is both *real* and *immediate*, before a federal court may examine the validity of a criminal statute." *Duling*, 782 F.2d at 1206 (emphasis added) (citations omitted).

Moreover, "a plaintiff seeking prospective injunctive relief may not rely on prior harm to establish Article III standing." *Abbott*, 900 F.3d at 176 (citation modified); *Kenny v. Wilson*, 885 F.3d 280, 287 (4th Cir. 2018) (citing *O'Shea v. Littleton*, 414 U.S. 488, 495–96 (1974)) ("[B]ecause plaintiffs here seek declaratory and injunctive relief, they must establish an ongoing or future injury in fact.").

Where, as here, both individual and organizational plaintiffs have filed suit, "[t]he standing requirement must be satisfied by individual and organizational plaintiffs alike." *White Tail Park, Inc. v. Stroube*, 413 F.3d 451, 458 (4th Cir. 2005) (citing *Havens Realty Corp. v. Coleman*, 455 U.S. 363, 378 (1982)).

### B. Plaintiffs fail to allege a credible threat of prosecution or make a sufficient showing of self-censorship.

Plaintiffs cannot meet the injury-in-fact requirement necessary to establish standing because their Complaint fails to allege, and the facts outside of the Complaint confirm, that there is not a credible threat of prosecution. Thus, Plaintiffs also cannot justify the need to self-censor their conduct because there is no objectively good reason for doing so. Accordingly, their claims against the CA Defendants should be dismissed.

First, the CA Defendants have *never* prosecuted or threatened to prosecute *anyone* under Va. Code § 20-28. Ex. 1, Martin Decl. ¶ 6; Ex. 2, Gaines Decl. ¶ 6. In addition, the CA Defendants are not aware of any prosecution of a marriage officiant that has occurred in their respective jurisdictions or of any threat to prosecute a marriage officiant.[3]

---

[3] Ex. 1, Martin Decl. ¶ 7; Ex. 2, Gaines Decl. ¶ 7.

Second and tellingly, Plaintiffs' Complaint contains no allegations that Virginia Code § 20-28 has ever been enforced anywhere in the Commonwealth of Virginia. *Hogan*, 971 F.3d at 218 (citation omitted) ("[P]laintiffs have offered no evidence of the law having been enforced as they fear.").

Third, directly contrary to the Plaintiffs' repeated conclusory allegations that the CA Defendants have an "unrenounced obligation" to prosecute offenses under Code § 20-28, Compl. ¶¶ 71–72, 78, 85, by statute, the CA Defendants *do not have any obligation* to prosecute offenses under § 20-28. Instead, because § 20-28 is an unclassified misdemeanor,[4] Commonwealth's Attorneys have the discretion to determine whether to prosecute alleged violations of § 20-28. Code § 15.2-1627(B) ("The attorney for the Commonwealth and assistant attorney for the Commonwealth … *may in his discretion*, prosecute Class 1, 2 and 3 misdemeanors, or any other violation, the conviction of which carries a penalty of confinement in jail, or a fine of $500 or more, or both such confinement and fine." (emphasis added)); *see also* Ex. 1, Martin Decl. ¶¶ 3, 5; Ex. 2, Gaines Decl. ¶¶ 3, 5.[5]

Fourth, Plaintiffs fail to offer concrete, specific allegations concerning their intent to officiate any marriage in violation of Code § 20-28 in the future, making the threat of prosecution speculative rather than real and immediate. *Duling*, 782 F.2d at 1206.

---

[4] *See* Code § 18.2-8 (offenses punishable by confinement in state correctional facility, as opposed to jail, are felonies, and all other offenses are misdemeanors).
[5] *See also, e.g.*, *Commonwealth v. Estrada*, 108 Va. Cir. 292, 292 (Fairfax Cir. Ct. 2021) ("The Commonwealth's Attorney is generally responsible for prosecuting felonies in Virginia and has discretion to prosecute misdemeanors."); *Commonwealth v. Wilkerson*, 108 Va. Cir. 430, 431 (Newport News Cir. Ct. 2021) ("Virginia Code § 15.2-1627(B) dictates that while a Commonwealth's Attorney must prosecute felonies, prosecutorial discretion remains as to handling misdemeanors[.]").

Shorts asserts that her mother asked her to officiate her marriage ceremony in January 2025, Compl. ¶ 39, but the family chose to move forward with another officiant for that ceremony when Shorts did not receive authorization from the Clerk. *Id.*, ¶¶ 46–47. That alleged *past* harm has nothing to do with any actions on the part of the CA Defendants, and in any event, is insufficient on its own to confer standing. *Abbott*, 900 F.3d at 176 (past harm insufficient to confer standing for plaintiff seeking prospective injunctive relief). As to Shorts's plans—which are the facts critical to determine whether she is entitled to sue the CA Defendants for prospective relief—the Complaint contains only conclusory allegations. While Shorts alleges that she "has been approached by multiple members of her community asking whether she could officiate their weddings," Compl. ¶ 48, the Complaint does not contain any specific allegations regarding those wedding plans, such as who made the requests, when and where the weddings are to occur, and between whom. For this additional reason, Shorts also fails to establish a credible threat of prosecution.

Davis does not fare much better. While the Complaint alleges that "Rev. Davis's son has postponed his wedding to September 2025, hoping that Rev. Davis will be able to officiate in his capacity as a ULC Monastery minister, not a civil celebrant," and that "Rev. Davis remains ready and willing to fulfill this role," *id.* ¶ 61, the Complaint does not specify where the postponed wedding is to occur. The Complaint alleges that "Rev. Davis has also had to decline another request to officiate a June 2025 wedding for a coworker's family member," *id.* ¶ 62, but in the same vein as Shorts's allegations, such an alleged past harm is insufficient to confer standing. *Abbott*, 900 F.3d at 176. Outside of the possibility that Davis may officiate his son's wedding months in the future, Compl. ¶ 61, which is neither imminent nor supported by particularized facts, the Complaint only contains the conclusory, vague allegation that "Rev. Davis wishes to officiate

12

weddings as a minister in Augusta County and the City of Staunton consistent with his and the Church's religious tenets." *Id.*, ¶ 65. This hypothetical, abstract wish, however, falls well short of the particularized facts necessary to demonstrate Davis's fear of prosecution is more than conjectural. *See Duling*, 782 F.2d at 1206 (citing *Younger v. Harris*, 401 U.S. 37, 51–53 (1971)) ("[S]ubjective fear of prosecution does not establish an objective threat.").

Moreover, both individual Plaintiffs' allegations show that they lack the intent to violate Code § 20-28 and do not intend to officiate weddings in the absence of authorization, whether judicially mandated or not.[6] Thus, they can only establish injury in fact through a sufficient showing of self-censorship. But "a putative plaintiff can[not] establish … an objectively good reason for refraining from speaking and 'self-censoring'" without a credible threat of enforcement. *Abbott*, 900 F.3d at 176 (citations omitted); *Duling*, 782 F.2d at 1206 (citing *Steffel v. Thompson*, 415 U.S. 452, 458–59 (1974)) ("Even in the area of First Amendment disputes, the Supreme Court has generally required a credible threat of prosecution before a federal court may review a state statute."). And in this case, as in *Duling*, "there is simply no basis for concluding that [Plaintiffs] are threatened by the existence or operation of these laws." 782 F.2d at 1207.

The individual Plaintiffs' lack of intent to conduct a wedding without legal authorization and violate Code § 20-28 underscores that it makes no sense to involve the CA Defendants in this lawsuit. The issues in controversy relate to the application and interpretation of two of the underlying marriage statutes governing authorization to celebrate or perform the rites of marriage,

---

[6] As summarized above, Shorts and her family chose to have another celebrant officiate her mother's wedding, and otherwise, "she has been forced to decline" the unspecified requests of other members of her community, "citing her uncertain legal authority and fearing repercussions under Virginia law." Compl., ¶ 48. Davis has also allegedly declined a request to officiate, and his son has postponed his wedding in the hopes that his father will obtain the state's formal authorization to officiate it. *Id.*, ¶¶ 61–62.

13

Virginia Code §§ 20-23 and 20-26—not the interpretation of Code § 20-28. Based on Plaintiffs' allegations, the Court could only find Code § 20-28 unconstitutional as applied to Plaintiffs if it finds either Code §§ 20-23 or 20-26 unconstitutional as applied to Plaintiffs, because Plaintiffs have not alleged any independent basis for § 20-28's unconstitutionality.

If successful in that challenge, Plaintiffs would obtain a permanent injunction prohibiting the Clerk Defendants from denying them authorization to celebrate or perform the rites of marriage, thus removing the possibility of criminal prosecution under Code § 20-28 and rendering any injunctive relief directed to the CA Defendants completely superfluous because Shorts and Davis would obtain legal authorization to officiate marriages.[7]

### C. The ULC Monastery lacks standing to sue on its own behalf or through associational standing.

The absence of a credible threat of enforcement dictates not only that Shorts and Davis fail to establish an injury in fact, but also that the ULC Monastery fails to do so.

The ULC Monastery can fulfill Article III's standing requirements in two ways. First, ULC "may establish standing to bring suit on its own behalf when it seeks redress for an injury suffered by the organization itself." *Stroube*, 413 F.3d at 458 (citing *Warth v. Seldin*, 422 U.S. 490, 511 (1975)). Second, ULC "may establish 'associational standing' to bring an action in federal court 'on behalf of its members when: (1) its members would otherwise have standing to sue as individuals; (2) the interests at stake are germane to the group's purpose; and (3) neither the claim made nor the relief requested requires the participation of individual members in the suit.'" *Id.* at 458 (quoting *Friends for Ferrell Parkway, LLC v. Stasko*, 282 F.3d 315, 320 (4th Cir. 2002)).

---

[7] *Cf. Guill v. Allen*, No. 1:19cv1126, 2023 U.S. Dist. LEXIS 167934, at *106 n.27 (M.D.N.C. Sep. 21, 2023) (questioning need for presence of local sheriff as a defendant in action where "Plaintiffs already have [sued] the judicial officers who crafted and implement the policies as Defendants and any injunction under Federal Rule of Civil Procedure 65 would bind those with notice of it and acting in concert with the enjoined Defendants").

14

The ULC Monastery itself does not, and cannot, allege that it may undertake some action that subjects it as an organization to criminal prosecution under Code § 20-28. "So both the individual- and associational-standing theories hinge on a minister becoming subject to criminal prosecution. Only *then* could ULC itself be injured by a prosecution that injures a member." *Univ. Life Church Monastery Storehouse v. Nabors*, 35 F.4th 1021, 1034 (6th Cir. 2022). Because both Shorts and Davis fail to allege a credible threat of enforcement, there is "no basis … to conclude that ULC has standing to protect itself or one of its members from prosecution." *Id.*

Plaintiffs fail to establish an injury in fact, so they lack standing.

## II.     Sovereign immunity bars Plaintiffs' claims.

Each "State is a sovereign entity in our federal system." *Seminole Tribe of Fla. v. Fla.*, 517 U.S. 44, 54 (1996) (citation omitted). A "fundamental aspect" of that sovereignty is immunity from suit. *Alden v. Maine*, 527 U.S. 706, 713 (1999). The Eleventh Amendment "confirms" that a State is not "amenable to the suit of an individual without its consent." *Seminole Tribe*, 517 U.S. at 54 (citation modified). "[B]ecause 'a suit against a state official in his or her official capacity is not a suit against the official but rather is a suit against the official's office,' it is 'no different from a suit against the State itself.'" *Fauconier v. Clarke*, 966 F.3d 265, 279 (4th Cir. 2020) (quoting *Will v. Mich. Dep't of State Police*, 491 U.S. 58, 71 (1989)). "[L]ike standing, Eleventh Amendment immunity presents a jurisdictional question that may bar a suit from advancing to the merits." *Indus. Servs. Grp., Inc. v. Dobson*, 68 F.4th 155, 167 (4th Cir. 2023) (citations omitted).

The CA Defendants are state officials. Va. Const. Art. VII, § 4 ("There shall be elected by the qualified voters of each county and city … an attorney for the Commonwealth."); Va. Code § 15.2-1600(A) (same); *Brown v. Caldwell*, No. 7:13cv00553, 2014 U.S. Dist. LEXIS 128076, at *11 (W.D. Va. Mar. 18, 2014) ("In Virginia, the Commonwealth's Attorney is a constitutional officer of the Commonwealth."). Plaintiffs have sued the CA Defendants in their official capacities,

15

which "is no different from a suit against the State itself." *Fauconier*, 966 F.3d 265 at 279 (citation modified).

No exception to sovereign immunity applies in this case. Plaintiffs' suit is therefore barred by the Eleventh Amendment and the Commonwealth's sovereign immunity.

### A. The *Ex parte Young* exception to sovereign immunity does not apply when a state official has not enforced or threatened to enforce the challenged law.

The Supreme Court recognized an exception to state sovereign immunity under the doctrine announced in *Ex parte Young*, 209 U.S. 123 (1908), which "permits a federal court to issue prospective, injunctive relief against a state officer to prevent ongoing violations of federal law, on the rationale that such a suit is not a suit against the state for purposes of the Eleventh Amendment." *Bland v. Roberts*, 730 F.3d 368, 390 (4th Cir. 2013) (citation modified). "The *Ex parte Young* exception is directed at 'officers of the state [who] are clothed with some duty in regard to the enforcement of the laws of the state, *and* who threaten and are about to commence proceedings . . . to enforce against parties affected [by] an unconstitutional act.'" *McBurney v. Cuccinelli*, 616 F.3d 393, 399 (4th Cir. 2010) (quoting *Young*, 209 U.S. at 155–56).

Thus, to invoke the *Young* exception to state sovereign immunity, a plaintiff must establish two elements: (1) a "special relation" between the state official being sued and the challenged statute, *id.*; and (2) that the state official has acted or threatened to act with respect to the challenged law. *Id.* at 402.

The second element—"[t]he requirement that there be some actual or threatened enforcement action before *Young* applies[—]has been repeatedly applied by the federal courts." *Okpalobi v. Foster*, 244 F.3d 405, 415 (5th Cir. 2001) (en banc) (plurality opinion) (collecting cases). In *McBurney*, for example, the Fourth Circuit held that the *Young* exception could not be applied because the "[b]ecause the Attorney General has not enforced, threatened to enforce, or

16

advised other agencies to enforce the VFOIA." 616 F.3d at 402 (citing *Young*, 209 U.S. at 155–56). Likewise, in *Foulke v. Virginia State Police*, the district court held that "[b]ecause neither [Defendant] ha[s] 'enforced, threatened to enforce, or advised other agencies to enforce' any law against Plaintiff, 'the *Ex parte Young* fiction cannot apply.'" No. 6:12-CV-00006, 2012 U.S. Dist. LEXIS 135948, at *21 (W.D. Va. Sep. 24, 2012) (quoting *McBurney*, 616 F.3d at 402).[8]

The "Article III standing analysis and *Ex parte Young* analysis 'significantly overlap.'" *City of Austin v. Paxton*, 943 F.3d 993, 1002 (5th Cir. 2019) (quoting *Air Evac EMS, Inc. v. Tex., Dep't of Ins., Div. of Workers' Comp.*, 851 F.3d 507, 520 (5th Cir. 2017)). The Supreme Court has summarized: "To sustain suit … whether under Article III or *Ex parte Young*, [a plaintiff] must show at least a credible and specific threat of enforcement." *Whole Woman's Health v. Jackson*, 595 U.S. 30, 57 (2021) (citation omitted).

### B. The *Ex parte Young* exception does not apply because the CA Defendants have neither enforced nor threatened to enforce Code § 20-28.

Because the CA Defendants are unaware of any other person besides Commonwealth's Attorneys who *may in their discretion* prosecute an alleged violation of § 20-28 other than a complaining witness,[9] the CA Defendants do not challenge the application of the *Ex parte Young* exception to state sovereign immunity on the basis that Plaintiffs cannot establish the first element—the requisite "special relation." *McBurney*, 616 F.3d at 399. For the same reasons Plaintiffs cannot establish a credible threat of prosecution to satisfy the injury-in-fact requirement for constitutional standing, however, Plaintiffs cannot satisfy *Young*'s second requirement that

---

[8] *See also Lighthouse Fellowship Church v. Northam*, 462 F. Supp. 3d 635, 643–44 (E.D. Va. 2020) (concluding "the Court 'cannot apply *Ex parte Young* because [the Governor] has not acted or threatened to act'" (quoting *McBurney*, 616 F.3d at 402)).

[9] Virginia law allows for the prosecution of misdemeanor offenses by a complaining witness in the absence of a Commonwealth's Attorney or other attorney for the prosecution. *See* Va. Code § 19.2-265.5.

17

there be an actual or threatened enforcement action. *Id.* at 402; *see Jackson*, 595 U.S. at 57 (citation omitted) (credible threat of enforcement required for Article III standing and sustaining suit under *Young*); *Paxton*, 943 F.3d at 1002 (citation omitted) (same).

In *Foulke*, the district court found that the allegations of the complaint amounted to nothing more than the fact that the defendant officials held their respective offices. 2012 U.S. Dist. LEXIS 135948, at *21. "Neither [of the defendants we]re alleged to have been involved in any way with the conduct of which Plaintiff complains." *Id.* The district court therefore granted the defendants' motion to dismiss, ruling, "even if I 'were to find a special relation,' I 'cannot apply *Ex parte Young* because' there are no allegations that [the defendants] have 'acted or threatened to act.'" *Id.* at *20–21 (quoting *McBurney*, 616 F.3d at 402).

Similarly here, the CA Defendants have been hailed into federal court by Plaintiffs without ever having prosecuted or threatening to prosecute anyone under the challenged statute, Code § 20-28. Argument, *supra*, at 10. Indeed, Plaintiffs have not even alleged that the challenged criminal statute has *ever* been enforced *anywhere* in Virginia. *Id.* at 10–11. Plaintiffs can only offer the conclusory allegation that the CA Defendants have an "unrenounced obligation" to enforce the statute—an allegation that is incorrect in light of the statutory discretion vested in Commonwealth's attorneys to prosecute misdemeanors such as the enforcement provision at issue. *Id.* at 11.

As with standing under Article III, these allegations fall short of establishing the credible and specific threat of enforcement required to invoke the *Ex parte Young* exception to state sovereign immunity. For this additional reason, the CA Defendants should be dismissed.

## CONCLUSION

Consistent with the reasons stated above, the Court should grant the CA Defendants' motion to dismiss.

18

| | |
|---|---|
| Dated: July 14, 2025 | Respectfully submitted, |
| | |
| Jason S. Miyares | /s/ Stanley W. Hammer |
| *Attorney General of Virginia* | Erin R. McNeill (VSB No. 78816)* |
| | Stanley W. Hammer (VSB No. 82181)* |
| Thomas J. Sanford | Assistant Attorneys General |
| *Deputy Attorney General* | Office of the Attorney General |
| | 202 North Ninth Street |
| Jacqueline C. Hedblom | Richmond, Virginia 23219 |
| *Trial Section Chief* | Telephone: (804) 692-0598 |
| *Senior Assistant Attorney General* | Facsimile: (804) 371-2087 |
| | emcneill@oag.state.va.us |
| | shammer@oag.state.va.us |
| | *Counsel of Record for Tim A. Martin and Jeffrey Gaines* |

## **CERTIFICATE**

      I hereby certify that on July 14, 2025, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system.

      */s/ Stanley W. Hammer*
      Stanley W. Hammer
      Assistant Attorney General
      *Counsel for Tim A. Martin and Jeffrey Gaines*