UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF VIRGINIA
HARRISONBURG DIVISION

| | |
|---|---|
| UNIVERSAL LIFE CHURCH MONASTERY STOREHOUSE, et al., <br><br> Plaintiffs, <br><br> v. <br><br> R. STEVEN LANDES, in his official capacity as Clerk of Circuit Court for Augusta County, et al., <br><br> Defendants. | Case No. 5:25-cv-47 |

**COMMONWEALTH'S ATTORNEY DEFENDANTS'
REPLY MEMORANDUM IN SUPPORT OF MOTION TO DISMISS
<u>PURSUANT TO FEDERAL RULE OF CIVIL PROCEDURE 12(b)(1)</u>**

Defendants Tim A. Martin and Jeffrey Gaines, Commonwealth's Attorneys for Augusta County and the City of Staunton, Virginia (the "CA Defendants"), by counsel, submit this Reply Memorandum in Support of their Motion to Dismiss Pursuant to Federal Rule of Civil Procedure (12)(b)(1).

## <u>INTRODUCTION</u>

Plaintiffs do not dispute that the CA Defendants have never prosecuted or threatened to prosecute an offense under the challenged statute and are not aware of any such prosecution or threat to prosecute in their respective jurisdictions. Indeed, Plaintiffs are unable to identify *any* prosecution of an offense under Va. Code § 20-28. And Plaintiffs readily admit that they only offer "general factual allegations" about Revs. Shorts and Davis's purported plans to solemnize weddings in Augusta County and the City of Staunton. ECF 32, at 10.

Yet Plaintiffs argue that they have established the "*credible* threat of prosecution"[1] necessary for their standing and to overcome the CA Defendants' sovereign immunity, insisting that the mere existence of Va. Code § 20-28 entitles them to challenge the constitutionality of a state criminal statute in federal court.[2] This skewed interpretation of standing doctrine, which would effectively eviscerate the injury-in-fact requirement, is not the law. If Plaintiffs were correct, "[f]ederal judges would come to operate as second vetoes, through whom laws must pass for approval before they could be enforced." *Doe v. Duling*, 782 F.2d 1202, 1207 (4th Cir. 1986). "To adjudge [such a] fanciful dispute would undermine the proper role of federal courts in our system of government and usurp the position of state courts and legislatures as primary arbiters of state law." *Id.* at 1204.

In this case, Plaintiffs both fail to offer concrete plans to violate the challenged statute ***and*** to show that they would be prosecuted if they followed through on any such plans. Because "Plaintiffs [have therefore] failed to show even a remote chance that they are threatened with prosecution," *id.*, this Court should decline Plaintiffs' invitation to "opine in the abstract on the validity of state enactments," *id.* at 1207, and dismiss the CA Defendants from this case.

## ARGUMENT

The parties agree that the standing and sovereign immunity analyses effectively overlap. *Compare* ECF 31, at 17–18, *with* ECF 32, at 14–15. Thus, "[t]o sustain suit … whether under Article III or *Ex parte Young*, [Plaintiffs] must show at least a credible and specific threat of enforcement." *Whole Woman's Health v. Jackson*, 595 U.S. 30, 57 (2021) (citation omitted).

---

[1] *Md. Shall Issue, Inc. v. Hogan*, 971 F.3d 199, 217 (4th Cir. 2020) (emphasis added) (citation modified).
[2] "Here, Virginia Code § 20-28 undisputedly makes it a crime for Church ministers to solemnize a marriage without state authorization. Its existence is sufficient to establish Plaintiffs' standing to challenge its unconstitutional application." ECF 32, at 9.

Because Plaintiffs cannot show such a credible and specific threat, they lack standing to sue and cannot overcome the CA Defendants' sovereign immunity.

I. **Plaintiffs' effort to downplay the required showing for a credible threat of enforcement fails.**

Throughout their brief, Plaintiffs try but fail to downplay the showing required to demonstrate a credible threat of enforcement.

First, Plaintiffs' discussions of the fact that the CA Defendants have not disavowed enforcement, ECF 32, at 9–10, and that Plaintiffs are not required to break the law, *id.* at 10, attempt to shift the burden of proof. Plaintiffs must show that there is a credible threat of enforcement; the CA Defendants do not have to prove enforcement is an impossibility.

The CA Defendants do not rely on disavowal of enforcement and instead have only corrected Plaintiffs' repeated false, conclusory allegation that the CA Defendants have an "unrenounced obligation" to enforce Va. Code § 20-28. Far from an "unrenounced obligation," state statute provides Commonwealth's Attorneys with the discretion to determine whether to prosecute misdemeanors such as the statute at issue. ECF 31, at 11.

As to the Plaintiffs' ability to establish standing without violating the law, the CA Defendants conspicuously acknowledged in their opening brief that injury-in-fact may be established in First Amendment cases through self-censorship. ECF 31, at 9–10, 13. The salient point that Plaintiffs try to sidestep, however, is that "a credible threat of enforcement is critical; without one, a putative plaintiff can establish neither a realistic threat of legal sanction if he engages in the speech in question, ***nor*** an objectively good reason ***for refraining from speaking and 'self-censoring'*** instead." *Abbott v. Pastides*, 900 F.3d 160, 176 (emphasis added) (citations omitted).

3

In relying on *Universal Life Church Monastery Storehouse v. Nabors*, 35 F.4th 1021 (6th Cir. 2022), a case that was litigated by one of the ULC Monastery's counsel in this case, Plaintiffs omit a critical holding by the Sixth Circuit in that case in an effort to support their standing and sovereign immunity arguments. Plaintiffs claim that in *Nabors*, "When Tennessee officials denied Church ministers equal rights to solemnize weddings, the Sixth Circuit rejected their standing and sovereign immunity defenses." ECF 32, at 1. And in their discussion of self-censorship, Plaintiffs offer, "[a]s in *Nabors*, 35 F.4th at 1034, where the Sixth Circuit rejected the same arguments against the Church and its ministers, it is enough that Plaintiffs are ready and willing … to engage in such activities." ECF 32, at 10.

Not so. While the Sixth Circuit did find that certain plaintiffs in *Nabors* had standing to sue three different local prosecutors, Plaintiffs fail to mention that the Sixth Circuit held that one of the local prosecutors should be dismissed on standing grounds, holding that because the individual plaintiffs failed to allege plans to solemnize future weddings in the prosecutor's jurisdiction, both the individual plaintiffs and the ULC Monastery lacked standing to sue the prosecutor. 35 F.4th at 1033–34.

The case against the CA Defendants is strikingly similar to the one that plaintiffs attempted to state against the dismissed prosecutor in *Nabors*. Rev. Shorts is unable to point to any specific plans to officiate a wedding in either Augusta County or the City of Staunton. And while the Complaint alleges that Rev. Davis's son has postponed his wedding to September 2025 in the hopes that Rev. Davis will be able to officiate it in his capacity as a ULC Monastery minister, Compl., ECF No. 1, ¶ 61, the Complaint is silent on where the postponed wedding is to occur—a material fact, given that the CA Defendants are only able to prosecute offenses in Augusta County and the City of Staunton.

Moreover, multiple facts distinguish the instances where the *Nabors* court held various plaintiffs had standing to sue local prosecutors. For example, in holding that a ULC Monastery minister had standing to sue one prosecutor, the Sixth Circuit highlighted that the ULC Monastery minister had shown he was "able and ready" to violate the contested statutes given that he had previously solemnized four marriages as a ULC Monastery minister in Tennessee. *Id.* at 1034. Here, Revs. Shorts and Davis do not allege that they have ever solemnized a marriage as ULC Monastery ministers.

In the same standing analysis, the court also stressed that because legislative amendments specifically targeting the conduct of ULC Monastery ministers had been recently passed, the factual circumstances showed that the ULC Monastery minister's fear of prosecution was plausible. *Id.* at 1034–35. That is not the case here. The language of the challenged criminal statute, which is neutral on its face and not specifically targeted to ULC Monastery ministers, has remained unchanged for 106 years. *See* Ex. 1, Va. Code 1919, § 4542. There is no argument here that a fear of prosecution is plausible due to the passage of a newly enacted amendment targeting ULC Monastery ministers.

Last, the court in *Nabors* stressed the local prosecutor's constitutional and statutory obligation to prosecute offenses in his county. 35 F.4th at 1035. Again, the case at bar stands in contrast: the CA Defendants have no obligation, but instead statutory discretion, to determine whether to prosecute the challenged statute. ECF 31, at 11. Because Virginia prosecutors have discretion with regard to enforcement of misdemeanors such as the criminal statute here, Plaintiffs must show a credible threat that prosecutors would exercise that discretion to prosecute ULC Monastery ministers who timely and accurately completed certificates of marriage without a lawful license to do so.

5

Plaintiffs also push back on the requirement to plead "particularized facts" demonstrating a credible threat of enforcement. They first argue that their inability to hold themselves out as available to perform marriage rites is an injury sufficient to confer standing. ECF 32, at 10. That inability does not confer standing **as to the CA Defendants**, however, because holding oneself out as being available to perform marriage rites is not proscribed under the challenged statute—only *performing* the ceremony of marriage without a lawful license is: "If any person knowingly perform the ceremony of marriage without lawful license, or officiate in celebrating the rites of marriage without being authorized by law to do so, he shall be confined in jail not exceeding one year, and fined not exceeding $500." Va. Code § 20-28. In addition, Plaintiffs rely on an unpublished case to support the proposition that "general factual allegations" are "sufficient at the pleading stage." ECF 32, at 10 (citing *Daniels v. Arcade, L.P.*, 477 F. App'x 125, 130 (4th Cir. 2012)). This stands in contradiction to the Fourth Circuit's express guidance: "Even in the area of First Amendment disputes, the Supreme Court has generally required a credible threat of prosecution before a federal court may review a state statute." *Duling*, 782 F.2d at 1206 (citing *Steffel v. Thompson*, 415 U.S. 452, 458–59 (1974)).

Last, Plaintiffs argue that a "law that facially restricts 'activity by the class to which the plaintiff belongs' presents a credible threat of prosecution by itself, especially 'when the presence of a statute tends to chill the exercise of First Amendment rights.'" ECF 32, at 9 (quoting *Preston v. Leake*, 660 F.3d 726, 735–36 (4th Cir. 2011)). But the licensing statutes at issue do not restrict activity by "the class to which the plaintiff belongs" because nearly anyone of any faith tradition could become licensed to officiate weddings under at least one of the three statutes, including people who do not have any religious affiliation whatsoever. Va. Code §§ 20-23, 20-25, 20-26. Furthermore, the *Cramer* court stated that the licensing statutes did not restrict the expressive

6

activity of a wedding or marriage ceremony. 214 Va. at 565 ("The state has no official interest in the place where a marriage occurs, or in the ceremony or ritual which surrounds the act."). Therefore, there is no restricted class and no protected speech that is chilled.

Try as they may to minimize their burden, the case law demonstrates that Plaintiffs "must show a threat of prosecution that is both ***real*** and ***immediate***, before a federal court may examine the validity of a criminal statute." *Duling*, 782 F.2d at 1206 (emphasis added) (citation omitted). They fail to do so.

## II. Plaintiffs fail to allege the specific and credible threat of enforcement required to sustain suit under Article III and *Ex parte Young*.

Plaintiffs' allegations fall short in two respects: they lack specificity regarding plans to engage in the proscribed conduct and thus do not show a good reason to refrain from engaging in the proscribed conduct, and they fail to demonstrate a credible threat of enforcement.

The CA Defendants have not only not prosecuted anyone under the challenged statute; they also have never threatened to prosecute anyone under the challenged statute and are unaware of any prosecutions or threats to prosecute in their respective jurisdictions. ECF 31, at 10. And as stated above, far from having an "unrenounced obligation" to prosecute offenses under Va. Code § 20-28 as Plaintiffs assert, the CA Defendants have no obligation at all but instead are afforded discretion to prosecute misdemeanor offenses such as the one at issue here.

This is coupled by vague, conclusory allegations concerning Revs. Shorts and Davis's desire to officiate weddings as ULC Monastery ministers. Given that Rev. Shorts and her family chose to move forward with another celebrant for her mother's wedding, Compl. ¶¶ 46–47, Rev. Shorts is unable to point to any specific plans to officiate a wedding in either Augusta County or the City of Staunton. Rev. Shorts can only offer that she has been approached, but has had to turn down, requests to officiate from unnamed members of her community. *Id.* ¶ 48. The Court has

7

been told nothing at all about those requests—when they were made, by whom they were specifically made, and where the weddings were to occur. Such details are needed, but absent, to demonstrate any possibility that a prosecution could be initiated in Augusta County or the City of Staunton at the direction of the CA Defendants.

The only allegation containing any specificity on the part of Rev. Davis is that his son has postponed his wedding to September 2025 in the hope that Rev. Davis will be able to officiate it in his capacity as a ULC Monastery minister. *Id.* ¶ 61. But notwithstanding that the Commonwealth's Attorneys for Augusta County and the City of Staunton have been sued, the Complaint contains no allegation regarding where this postponed wedding is to occur. And similar to Rev. Shorts, Rev. Davis otherwise cites his abstract wish to conduct future weddings in Augusta County and the City of Staunton in support of his standing to sue. *Id.* ¶ 65.

Thus, the facts alleged show that at most, Revs. Shorts and Davis have a subjective fear of prosecution for officiating a hypothetical wedding. This does not suffice to create the "threat of prosecution that is both real and immediate" needed to support standing. *Duling*, 782 F.2d at 1206 (citation omitted). As noted by the court in *Duling*, even in *Steffel v. Thompson*, a case involving a First Amendment challenge where the Supreme Court found standing, the plaintiff twice engaged in the prohibited conduct and was twice threatened with arrest. *Id.* at 1206–07 (citing *Steffel v. Thompson*, 415 U.S. 452, 458–59 (1974)). Those facts are not present here.

Given that Revs. Shorts and Davis fail to plead a credible threat of prosecution, the ULC Monastery also lacks standing to sue the CA Defendants. The Complaint contains no allegation that the ULC Monastery itself could do anything to subject it to prosecution, so the ULC Monastery cannot establish standing by seeking "redress for an injury suffered by the organization itself." *White Tail Park, Inc. v. Stroube*, 413 F.3d 451, 458 (4th Cir. 2005) (citation omitted). Instead, it

8

can only establish standing by showing a credible threat of prosecution to one of its members. *Nabors*, 35 F.4th at 1034. For the reasons stated above, it cannot, so it also lacks standing to sue.

And for the same reason Plaintiffs lack standing to sue, they cannot overcome the CA Defendants' sovereign immunity, because the *Ex parte Young* fiction does not apply where a defendant has not "enforced, threatened to enforce, or advised other agencies to enforce" the challenged law. *McBurney v. Cuccinelli*, 616 F.3d 393, 402 (4th Cir. 2010).

Accordingly, Plaintiffs lack standing to sue and the CA Defendants are protected by sovereign immunity.

## **CONCLUSION**

Consistent with the reasons stated above, the Court should grant the CA Defendants' motion to dismiss.

Dated: August 18, 2025                                          Respectfully submitted,

|  |  |
|---|---|
|  | */s/ Stanley W. Hammer* |
| Jason S. Miyares | Erin R. McNeill (VSB No. 78816)* |
| *Attorney General of Virginia* | Stanley W. Hammer (VSB No. 82181)* |
|  | Assistant Attorneys General |
| Thomas J. Sanford | Office of the Attorney General |
| *Deputy Attorney General* | 202 North Ninth Street |
|  | Richmond, Virginia 23219 |
| Jacqueline C. Hedblom | Telephone: (804) 692-0598 |
| *Trial Section Chief* | Facsimile: (804) 371-2087 |
| *Senior Assistant Attorney General* | emcneill@oag.state.va.us |
|  | shammer@oag.state.va.us |
|  | *Counsel of Record for Tim A. Martin and Jeffrey Gaines* |

9

## **CERTIFICATE**

I hereby certify that on August 18, 2025, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system.

                                                       */s/ Stanley W. Hammer*
                                                       Stanley W. Hammer
                                                       Assistant Attorney General
                                                       *Counsel for Tim A. Martin and Jeffrey Gaines*